# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**MARCUS BROWN, JR.**                                                                      **PLAINTIFF**

**v.**                                       No: 4:20-cv-00364-PSH

**COREY HAYES,** *et al.*                                                                  **DEFENDANTS**

## MEMORANDUM AND ORDER

### I. Introduction

Plaintiff Marcus Brown, Jr. filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on April 1, 2020, and an amended complaint on May 4, 2020 (Doc. Nos. 1 & 10). Brown sues Corporal Corey Hayes, Nurse Lanetra Evans, Nurse Carolyn Iverson, Nurse Christine Turntine, Nurse Denise Canada-Johnson, and Dr. Darryl Elkin in both their official and individual capacities (the "Defendants"). He alleges that the Defendants were deliberately indifferent to his serious medical needs while he was incarcerated as a pre-trial detainee at the Jefferson County Jail.[1] *Id.* at 6-13. Specifically, he claims that his diabetes was not adequately treated, causing him to suffer a seizure[2] and fall, after which he was taken to the hospital for treatment. *Id.*

---

[1] Brown is currently incarcerated in the Greene County Detention Center. *See* Doc. No. 46.

[2] While it is not clear whether Brown suffered a true seizure or some other medical emergency, the Court will refer to it as a seizure in this opinion.

Before the Court is a motion for summary judgment, brief in support, and statement of undisputed facts filed by the Defendants (Doc. Nos. 38-40). Brown filed a brief in response outlining the facts he disputes (Doc. No. 42) and an affidavit (Doc. No. 43). Defendants filed a reply (Doc. No. 44). Defendants' statement of facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute, and Defendants are entitled to judgment as a matter of law.

## II.  Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents,

electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III.  Facts

In support of their motion for summary judgment, the Defendants submitted a statement of facts (Doc. No. 39) with the following documentary evidence: an affidavit by Jefferson County Chief Deputy Joseph Gorman with Brown's Arrest and Booking Information, Brown's Requests and Grievances, Brown's medical file, Brown's Incident Reports, and relevant policies of the Jefferson County Jail (Doc. No. 39-1); and an affidavit by Lanetra Evans, nurse manager/head nurse for the Jefferson County Sheriff's Department, with certain medical records attached (Doc.

No. 39-2). Brown filed a brief in response to the Defendants' motion, in which he disputes that he received the insulin he was prescribed (Doc. No. 42).

Having reviewed the Defendants' statement of facts, Brown's brief in response and affidavit, and the other pleadings and exhibits, the Court finds the following facts to be undisputed.

1. On January 22, 2020, Plaintiff Marcus Brown, Jr. was booked into the Jefferson County Jail (the "Jail"). Doc. No. 39-1 at 6, *Affidavit of Joseph Gorman*. Brown remained in the custody of Jefferson County until February 27, 2020, when he was released to the custody of the United States Marshals Service. *Id.* at 10.

2. Nurses are on duty at the Jail daily, from 6:30 a.m. to 8:00 p.m., and provide medical care to detainees at the Jail daily. Doc. No. 39-2 at 1, *Affidavit of Lanetra Evans* ("*Evans Affidavit*") at ¶ 3. Anytime a nurse is not present and working at the Jail, a nurse is on call if needed—typically the head nurse. *Id.* at ¶ 4. Staff who work at the Jail are trained and instructed by policy to respond to medical emergencies at the Jail, and to summon emergency medical care if needed by a detainee at any time. *Id.*

3. When Brown was booked into the Jail on January 22, 2020, a Medical Transfer Summary was prepared, with information obtained from the Pulaski County Regional Detention Facility ("PCRDF"), where Brown was previously detained. Doc. No. 39-2 at 6. The transfer summary lists three medications that Brown had

been taking: (1) Glipizide, 10 mg daily; (2) Humulin R 100U Insulin as needed based on blood sugar levels; and (3) Metformin, 500 mg twice per day. *Id.* The PCRDF sent only Glipizide with Brown when he was transferred from the PCRDF to the Jefferson County Jail on January 22, 2020, but medical staff at the Jefferson County Jail ensured that Metformin and insulin were available to provide to Brown as prescribed. *Evans Affidavit* at ¶ 5.

4. Physician's Orders were prepared for Brown upon his intake at the Jail. Doc. No. 39-2 at 7. The physician ordered the same medications that Brown was prescribed at the PCRDF. *Id.* According to Evans, the medications ordered are commonly prescribed for diabetic inmates at the Jail—daily medication to regulate blood sugar levels, with insulin authorized if the daily medication does not adequately regulate blood sugar levels. *Evans Affidavit* at ¶ 6. Many diabetic patients taking this type of medication regiment do not need insulin daily. *Id.*

5. Brown's Jail Medication Administration Record for January 2020 documents that he received Glipizide once daily from January 22 through January 31, and Metformin once on January 23, and twice daily thereafter through January 31. Doc. No. 39-1 at 16.

6. Brown's Jail Medication Administration Record for February 2020 documents that he received Glipizide once daily from February 1 through February

27. He received Metformin twice daily from February 1 through February 25, and once daily on February 26 and February 27. Doc. No. 39-1 at 17.

7. According to the medication logs maintained contemporaneously, Brown was provided Glipizide daily and Metformin twice daily, as prescribed, throughout his detention in the Jail in January and February of 2020. *Evans Affidavit* ¶ 6.

8. At the Jail, all diabetic inmates are provided access to necessary equipment to test their blood sugar levels, four times each day—immediately before each of the three meals served daily at the Jail, and immediately before bedtime. *Evans Affidavit* at ¶ 7. Inmates line up if they wish to test their blood sugar, test themselves using the test equipment provided by Jail staff, and report their blood sugar levels to Jail staff. *Id.* If an inmate reports a blood sugar level within a range warranting insulin according to the inmate's physician orders, Jail staff provides the inmate with equipment, and the inmate self-administers the insulin. *Id.* This process for testing blood sugar levels and obtaining insulin as needed is available to all inmates at the Jail, four times per day, every day. *Id.*

9. According to Evans, the nurses who work at the Jail are trained and provide compassionate care to detainees. *Evans Affidavit* at ¶ 8. Per policy and custom, if an inmate makes a request to a nurse to check his blood sugar at a time

other than the four scheduled times each day, the nurse will accommodate the request if possible. *Id.*

10. Based on the processes identified above, Brown had access to blood-sugar testing, and insulin if needed, at least four times per day, throughout his detention in the Jail in January and February of 2020. *Evans Affidavit* at ¶ 7.

11. On February 18, 2020, Brown submitted a medical request, stating:

> There is Black Mold on the walls in the cells in B-Pod. There is no circulation. The walls are leaking water at night from somewhere. I am upstairs and its coming from the ceiling so I assume its coming from the roof. I am having symptoms as a result. I am having trouble sleeping at night because of respitory (sic) problems. I also am having trouble hearing out of my right ear and a constant headache.

Doc. No. 39-1 at 18.

12. In the early morning hours of February 22, 2020, Brown experienced a medical incident. Corporal Corey Hayes documented the incident as follows:

> On the above date and time stated, this Cpl. Hayes was alerted by several detainees that detainee Marcus Brown had fallen from the fourth step and had a seizure. This Cpl entered B pod and gave detainee Brown medical attention by putting a faded blanket behind his head to prevent him from banging it on the floor due to the seizure. This Cpl turned detainee Brown on his side to prevent him from choking on his tongue. As the Cpl gave medical treatment to detainee Brown, Detainee Andre Braswell went down the hallway to get a gurney. Lt. Marshall was notified of the medical emergency and contacted Mecca for the EMS Transportation. This Cpl Hayes and Detainee Andre Braswell put Detainee Brown on the gurney and took him to booking. This Cpl stayed with Detainee Brown until the EMS arrived. Detainee Brown was evaluated and taken to JRMC for treatment. Detainee John McKinney provided this Cpl with a statement on what happened. The statement was given to Lt. Marshall in booking. End of Report.

Doc. No. 39-1 at 20-21.

    13.    In his statement regarding the incident, detainee John McKinney wrote:

> The night inmate Marcus Brown got sick and lost consciousness, subsequently falling down the stairs in B-pod at Dub Brassell Detention Center located in Pine Bluff, Arkansas, I was sitting at a table in day area. I observed Mr. Brown coming down the steps at a rapid pace. Upon the last four steps Mr. Brown's body seized up. He tumbled to the floor. Myself and others alerted the on-duty deputies. They arrived shortly afterward and placed Mr. Brown on a gurney to get him out of the pod to get him medical attention.

Doc. No. 39-1 at 20-21 at 24.

    14.    Brown was taken by ambulance to Jefferson Regional Medical Center after his fall at the Jail. He was discharged later the same day. The discharge instructions from Jefferson Regional Medical Center include a prescription for Metformin and for Glipizide. *Evans Affidavit* at ¶ 10; Doc. No. 39-2 at 8. Brown's discharge diagnosis was hyperglycemia, or high blood sugar. *Id.*

    15.    On February 25, 2020, Brown submitted a grievance, writing:

> I am not receiving my diabetic meds properly (sic). I'm also not getting any glucose or blood pressure checks properly (sic). Which subsequently led me to hemoragging (sic) an seizing on 2-22-2020 around 2:30 AM. The jail staff here at Dub Braswell delayed my transport to Jefferson Regional Medical for 30-45 minutes due to them not having any transport personnel on duty or any medical staff.

Doc. No. 39-1 at 14.

16.     Brown did not submit a grievance or medical request related to his diabetic medication, or related to his medical care for diabetes, prior to his medical incident on February 22, 2020.  Doc. No. 39, *Defendants' Statement of Facts*, at ¶ 16.

17.     The Jail has a written grievance procedure.  Doc. No. 39-1 at 27-30.

18.     Per written policy at the Jail, detainees can submit medical requests daily for review by qualified medical personnel to ensure appropriate medical attention. Doc. No. 39-1 at 31.  Per written policy, all medication prescribed for an inmate shall be given in accordance with instructions of the prescribing authority. *Id.* at 33.

### IV.  Analysis

#### A.   *Individual Capacity Claims*

Defendants argue that they are entitled to qualified immunity with respect to Brown's claims against them in their individual capacities because he cannot establish a constitutional violation. Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary

judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Pretrial detainees' claims are evaluated under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment. *See Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). Pretrial detainees are entitled to at least as much protection under the Fourteenth Amendment as under the Eighth Amendment. *See id.* (citing *Spencer v. Knapheide Truck Equip. Co.,* 183 F.3d 902, 906 (8th Cir. 1999)); *see also Davis v. Hall,* 992 F.2d 151, 152–53 (8th Cir. 1993) (per curiam) (applying deliberate indifference standard to pretrial detainee's claims of inadequate medical care).[3] To succeed with an Eighth Amendment inadequate medical care

---

[3] In *Spencer,* the Eighth Circuit explained that it had never articulated an exact standard for evaluating medical treatment claims brought by pretrial detainees. 183 F.3d at 905. The Court acknowledged that pretrial detainees' claims may be subject to an

claim, a plaintiff must allege and prove that: (1) he had objectively serious medical needs; and (2) prison officials subjectively knew of, but deliberately disregarded, those serious medical needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Additionally, the Eighth Circuit has held that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

The evidence in this record does not establish that any of the Defendants were deliberately indifferent to Brown's serious medical needs, specifically his diabetes medication. There is no dispute that Brown received two of his diabetes medications as prescribed. Brown's only complaint regarding his medications is that he did not receive Humulin insulin. However, he acknowledges that his prescription for Humulin stated it was to be administered "as needed." Doc. No. 42 at 2. In his amended complaint, he explains how the Humulin is to be administered. He states,

> The insulin required was determined on the following scale: 150-200 = 4 units; 201-250 = 6 units; 251-300 = 8 units; 301-350 = 10 units; 351-400 = 12 units; 401-450 = 16 units; 451 → contact doctor for emergency treatment.

---

objective reasonable test rather than the subjective deliberate indifference standard. *Id.* The Eighth Circuit addressed this issue again in *Bailey v. Feltmann*, 810 F.3d 589, 593 (8th Cir. 2016), where it declined to address the proper constitutional standard unnecessarily, but noted that when that case was decided it was not clearly established that a pre-trial detainee was entitled to more protection than that provided by the Eighth Amendment.

Doc. No. 10 at 9.

Defendants provide evidence that Brown could test his blood sugar four times a day and request insulin if needed. *See Evans Affidavit* at ¶ 7. The nurses at the Jail would also accommodate inmates' requests to test their blood sugar at other times during the day to provide insulin if needed. *Id.* at ¶ 8. Brown's amended complaint supports that he could self-test upon request. In it, Brown alleges that on the day he arrived at the Jail, January 22, 2020, he asked a nurse "to have his accu-check done to see his blood sugar levels." Doc. No. 10 at 9. The nurse had Brown "self-test his sugar levels with their accu-check meter, strips and lancet." *Id.* at 9-10. He states that his blood sugar was 330 at that time and the unnamed nurse failed to administer insulin. Doc. No. 10 at 9-10. He has not since that time identified that nurse, and he has not provided evidence to connect any failure to administer insulin on January 22 with the February 22 seizure and fall.

Brown also complains in his amended complaint that he did not receive any blood sugar checks after January 22. *Id.* at 10. In his brief in response to the Defendants' motion for summary judgment and affidavit, Brown does not describe how often he tested his blood sugar at the Jail, what his blood sugar levels were, or whether he ever informed any Defendant that his blood sugar was high prior to the evening of February 21 or that he needed insulin. Doc. Nos. 42-43. He simply claims that the Jail keeps no documentation showing when inmates test their blood

sugar levels or what those levels were, and that makes it hard for him to prove that his levels were high enough to need insulin. Doc. No. 42 at 3. He claims the Jail's lack of documentation is "negligence at best." *Id.*

Brown has provided no evidence to dispute that he was able to test his blood sugar on a regular basis and request insulin if needed. There is also no evidence that Brown requested to check his blood sugar and was denied that request by any Defendant in this case, or that any Defendant failed to provide insulin after his blood sugar tested high. And Brown did not submit a grievance or medical request complaining that he was unable to test his blood sugar or did not receive insulin in response to high blood sugar readings prior to the medical incident on February 22, 2020. Brown has therefore failed to establish a genuine issue of material fact regarding his Humulin prescription. *See Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) (quoting *Flentje v. First Nat'l Bank of Wynne,* 340 Ark. 563, 11 S.W.3d 531 (2000) ("When the movant makes a prima facie showing of entitlement to a summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.").

Regarding Brown's seizure on February 22, 2020, Brown alleges that he told Corporal Hayes that he was not feeling well at 9:30 p.m. on February 21. Doc. No. 43 at 2; Doc. No. 11. He states that Hayes told him he would relay this information

to Lieutenant Marshall, and Brown did not speak to Hayes again until he had the seizure a few hours later. *Id.* Marshall is not a defendant in this case, and there is no evidence that Hayes had reason to believe Brown had a need for emergency medical treatment when he complained he was not feeling well the evening of February 21. *See Williams v. Whitfield*, No. 2:09CV00100 JLH/BD, 2010 WL 4792146, at *2 (E.D. Ark. Nov. 17, 2010) (quoting *Roberson v. Bradshaw,* 198 F.3d 645, 648 (8th Cir.1999) ("'[W]e have repeatedly emphasized that the need or the deprivation alleged must be *either obvious to the lay person* or supported by medical evidence, like a physician's diagnosis.'") (emphasis in original). Brown does not claim that he objected to Hayes' response that he would notify Marshall that Brown was not feeling well. He does not claim that he notified Hayes that he needed immediate treatment or asked to be taken to the emergency room. He does not claim that he made a request to check his blood sugar at that time. The evidence does not support a finding that Brown had a need for emergency treatment on February 21 that was obvious to Hayes. Accordingly, to the extent Brown sues Hayes for failing to obtain medical treatment for Brown before he fell the morning of February 22, Hayes is entitled to summary judgment.

Brown also complains that after his seizure, a supervisor prevented him from leaving in the ambulance without a transport officer, and that this delayed his leaving for the hospital for approximately one hour. Doc. No. 10 at 12; Doc. No. 43 at 3.

Brown does not identify who this supervisor was or allege that any Defendant was responsible for any delay he experienced in reaching the hospital. A defendant may not be held liable under § 1983 unless he was personally involved in or had direct responsibility for the constitutional violation. *See Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.") (internal quotations and citations omitted). Without any evidence indicating the named Defendants were involved in delaying Brown's transport to the evidence, they are entitled to summary judgment with respect to this allegation. And in any case, he has not alleged that this delay worsened his condition or caused him any particular injury. A plaintiff alleging a delay in medical treatment must establish "'the detrimental effect of delay in medical treatment.'" *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005) (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (holding that an inmate must produce verifying medical evidence to show detrimental effect of a delay in medical treatment to avoid summary judgment).

### B. *Official Capacity Claims*

Brown's official capacity claims also necessarily fail because he has not established that the Defendants are individually liable for an underlying substantive claim. *See Alexander v. Dallas Cty. Det. Ctr.,* No. 21-1397, 2021 WL 5121257, at *1 (8th Cir. Nov. 4, 2021); *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 674

(8th Cir. 2007) (holding that the County cannot be held liable under § 1983 if the individual defendants are not liable). Moreover, Brown has not alleged that the conditions he described were caused by an unconstitutional policy or custom of Jefferson County.[4]

### V. Conclusion

The Defendants are entitled to qualified immunity because Brown has not established that his constitutional rights were violated. Brown's official capacity claims necessarily fail as a result. Accordingly, Defendants' motion for summary judgment (Doc. No. 38) is granted, and Brown's claims are dismissed with prejudice.

DATED this 6th day of September, 2022.

_____
UNITED STATES MAGISTRATE JUDGE

---

[4] Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veach v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Thus, a suit against a defendant in his official capacity is in essence a suit against the County or city itself. *See Murray v. Lene*, 595 F.3d 868 (8th Cir. 2010); *Liebe v. Norton*, 157 F.3d 574 (8th Cir. 1998). A municipality cannot be held liable on the basis of *respondeat superior*, or simply by virtue of being the employer of a tortfeasor. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201 (8th Cir. 2013). Accordingly, the Defendants, as county employees, can only be held liable in their official capacities in this case if Brown can establish that a constitutional violation was committed pursuant to "an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009).